Richard GOMES

v.

Ashbel T. WALL, II, Director of the
Department of Corrections et
al.

No. 2002–536–Appeal.

Supreme Court of Rhode Island.

June 19, 2003.

Victor Beretta, Jr., Esq., Providence, for Plaintiff.

Michael B. Grant, Esq., Pawtucket, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The computation of so-called "good-time credit" when an inmate is serving consecutive sentences is the focus of this declaratory-judgment and injunctive-relief action. The defendants are Ashbel T. Wall, II, director of the Rhode Island Department of Corrections (DOC); James Weeden, warden; and Frederick Habien, a correctional officer in the Office of Records and Identification (hereinafter collectively referred to as the defendants). They appeal from a Superior Court order granting the plaintiff-inmate, Richard Gomes (plaintiff or Gomes), declaratory relief and determining that the defendants' calculation of his good-time credits was inconsistent with applicable law.[1] The court ruled that, as applied to Gomes, the DOC's policy of disaggregating consecutive sentences when determining the maximum amount of monthly good-time credit that an inmate can obtain was contrary to G.L.1956 § 42–

56–24(b). Because the DOC's policy and practice in this respect conflicts with the plain language of this statute, we affirm and deny the appeal.

In 1989, the Superior Court sentenced plaintiff to serve three consecutive eight-year sentences for different crimes. He currently resides in the medium security facility at the Adult Correctional Institutions (ACI). The plaintiff received credit for the awaiting-trial time that he served, retroactively to July 21, 1988. Beginning on that date, he also began receiving ten days of "good-time" credit per month, pursuant to the so-called "good-time" law, § 42–56–24. Section 42–56–24(a) provides as follows:

"The director, or his or her designee, shall keep a record of the conduct of each prisoner, and for each month that a prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life, appears by the record to have faithfully observed all the rules and requirements of the institutions and not to have been subjected to discipline, there shall, with the consent of the director of the department of corrections, or his or her designee, upon recommendation to him or her by the assistant director of institutions/operations, be deducted from the term or terms of sentence of that prisoner the same number of days that there are years in the term of his or her sentence; provided, that when the sentence is for a longer term than ten (10) years, only ten (10) days shall be deducted for one month's good behavior; and provided, further, that in the case of sentences of at least six (6) months and less than one year, one day per month shall be deducted[.]"

---

1. Pursuant to G.L.1956 § 9–30–1, a declaratory judgment order "shall have the force and effect of a final judgment[.]" Thus, this order is properly on appeal to us.

On February 20, 1994, plaintiff completed serving his first eight-year sentence and began serving his second and third consecutive sentences. On November 1, 1999, plaintiff completed serving the term of his second consecutive sentence. The plaintiff received ten days of good-time credit per month while he was serving these sentences. Beginning on November 1, 1999, however, plaintiff began receiving only eight days of good-time credit per month because, according to defendants, his remaining sentence was for a term of only eight years and, therefore, plaintiff could not receive more than eight days of good-time credit per month. When he discovered defendants' reduction in his eligibility for monthly good-time credits, plaintiff filed a complaint seeking relief under the Uniform Declaratory Judgments Act, G.L.1956 § 9–30–1. He requested the court to issue an order (1) declaring that the DOC's "practice of 'de-aggregating' consecutive sentences for the purpose of good-time credit delineation violate[s] the plain and unambiguous language" of § 42–56–24(b); and (2) permanently enjoining defendants "from 'de-aggregating' the petitioner's consecutive sentences for the purposes of good-time credit delineation."

The defendants answered the amended complaint and filed a motion to dismiss. They argued that, under this Court's decision in *Sousa v. Langlois*, 97 R.I. 196, 196 A.2d 838 (1964), plaintiff's request for affirmative injunctive relief—namely, directing defendants to restore plaintiff's good-time credit to ten days per month—was not available via an action for a declaratory judgment.[2]

The plaintiff contended that in accordance with § 42–56–24, he should be eligible for the maximum amount of good-time credit allowed by law (that is, ten days per month) based on the aggregate years of his three consecutive sentences. The defendants, however, argued that once plaintiff began serving his final eight-year sentence, he was eligible to receive only the number of days of good-time credit per month as there were years contained in the remaining unserved term of his last consecutive sentence.

Ultimately, the Superior Court hearing justice rejected defendants' reasoning. In doing so, he based his decision upon the language of § 42–56–24(b), which provides that "[f]or the purposes of computing the number of days to be deducted for good behavior, consecutive sentences shall be counted as a whole sentence[.]" The hearing justice concluded that "there is no lawful authority for the [s]tate to deaggregate the sentence when it's imposed[.]" He stated as follows:

"The Legislature is absolutely clear with the language it chose to employ in the statute. As I said earlier, I'll say again, quoting Section (b) of the statute, 'For the purposes of computing the number of days to be deducted for good behavior, consecutive sentences shall be counted as a whole sentence,' and that's the end of the legislative pronouncement on that particular point. They didn't say it shall be counted as a whole sentence until one of the consecutive sentences has been served at which time the remaining years will be viewed as a new sentence and, if the new sentence is less than ten years, then there shall be only that amount deducted from the prisoner's time to serve each month. So, there's nothing on the face of what the Legislature ₒenacted that allows the [s]tate to do what it is presently doing."

---

**2.** Although defendant filed the motion to dismiss on July 10, 2002, a day before the declaratory judgment hearing, the hearing justice did not expressly rule on this motion, except inferentially in his decision granting declaratory relief.

The hearing justice also rejected defendants' argument that it was inappropriate for plaintiff to combine an action for declaratory judgment with a prayer for injunctive relief. Relying on this Court's decisions in *Parente v. Southworth*, 448 A.2d 769, 772 (R.I.1982) and *Capital Properties, Inc. v. State*, 749 A.2d 1069, 1080 (R.I.1999), the hearing justice ruled that "Rules 18 and 20 of the Rules of the Rhode Island Superior Court allow for claims of this nature, meaning a declaratory judgment claim, to be combined with a claim or request for injunctive relief." He entered an order granting declaratory relief, and defendants filed a timely notice of appeal.[3] A single justice of this Court ordered the parties to show cause why we should not decide this appeal summarily. Because they have not done so, we shall proceed to resolve the appeal at this time.

▮ On appeal, defendants continue to press their argument that an action for a declaratory judgment was not the proper procedural vehicle to obtain the relief requested. At the outset, we note, declaratory orders and judgments are reviewable on appeal as are any other judgments. *Casco Indemnity Co. v. O'Connor*, 755 A.2d 779, 782 (R.I.2000). Section 9–30–7 provides that "[a]ll orders, judgments, and decrees under this chapter may be reviewed as other orders, judgments and decrees." *See also Newport Amusement Co. v. Maher*, 92 R.I. 51, 53–54, 166 A.2d 216, 217 (1960). In this case, plaintiff brought an action for a declaratory judgment pursuant to § 9–30–1, and, after a hearing before a justice of the Superior Court, that court entered an order that declared what the applicable law was under the facts of this case. Therefore, contrary to defendants' assertion, an appeal

from such an order, which constituted a final determination of the applicable legal and factual issues presented to the court, is proper in this case.

The defendants argue, as they did below, that pursuant to this Court's decision in *Sousa*, the hearing justice erred in granting affirmative injunctive relief under the provisions of the declaratory-judgment statute. *Sousa*, 97 R.I. at 199, 196 A.2d at 840–41. But our review of the hearing transcript dated July 11, 2002, and the court's ultimate order, reveals that the hearing justice merely "remain[ed] open to entertain a motion from the plaintiff seeking injunctive relief * * *." The hearing justice, however, did not rule on any such motion, nor did he grant any injunctive relief in the order that is the subject of this appeal. In any event, defendants' reliance on *Sousa* is misplaced. In *Sousa*, the petitioner, a prison inmate, filed a petition for a declaratory judgment seeking to receive the benefits of the good-time provisions contained in P.L.1960, ch. 112. *Sousa*, 97 R.I. at 198, 196 A.2d at 840. That statute provided for prisoners to receive good-time credits of up to ten days for each month of good behavior when a sentence was in excess of ten years. *Id.* Section 2 of P.L.1960, ch. 112, stated: "This act shall take effect upon its passage and all acts and parts of acts inconsistent herewith are hereby repealed." *Sousa*, 97 R.I. at 198, 196 A.2d at 840 (quoting P.L. 1960, ch. 112, § 2). When the trial court sentenced the petitioner in *Sousa*, G.L. 1938, ch. 55, § 18 addressed the subject of good-time credits. *Sousa*, 97 R.I. at 198, 196 A.2d at 840. That statute provided for five days of good-time credit for each month of good behavior by an inmate. *Id.* The *Sousa* petitioner argued that, based

---

**3.** The defendants also petitioned for a writ of certiorari (No.2002–488–M.P.), which we de- nied.

upon the language contained in the later-enacted § 2 of P.L.1960, ch. 112, the Legislature intended the amendment to apply to sentences imposed before the statute's effective date. *See Sousa,* 97 R.I. at 198, 196 A.2d at 840. The trial justice denied the petitioner's complaint on the grounds that the declaratory-judgment statute did not apply to criminal matters. *Id.* On appeal, this Court held that "[i]t is not the function of the declaratory judgment statute to grant affirmative relief." *Id.* at 199, 196 A.2d at 840.

■ This Court, however, decided the *Sousa* case in 1964 before the advent of the modern rules of civil procedure. After *Sousa,* we approved the Superior Court Rules of Civil Procedure on June 9, 1965. Those rules became effective as of January 10, 1966. They contained liberal provisions for joinder of different causes of action and requests for different types of relief in the same complaint that now are embodied in Rules 18 and 20. Thus, even though during the *Sousa* era a request for injunctive relief could not be granted in a pure action for a declaratory judgment, such a request for relief now can be joined in the same complaint with a demand for declaratory relief "in light of the liberalized provisions for joinder under Rules 18 and 20 of the Superior Court Rules of Civil Procedure." *Parente,* 448 A.2d at 772; *see also Capital Properties, Inc.,* 749 A.2d at 1080; *O'Connors v. Helfgott,* 481 A.2d 388, 394 n. 7 (R.I.1984); *Chase v. Mousseau,* 448 A.2d 1221, 1224 (R.I.1982); *Duffy v. Mollo,* 121 R.I. 480, 486–87, 400 A.2d 263, 267 (1979) (explaining that joining a claim for injunctive relief with a demand for declaratory judgment was "perfectly proper in view of the liberalized provisions for joinder under Rules of Civil Procedure 18 and 20"). Moreover, as Professor Kent has noted:

"With the abolition of the forms of action, the procedural merger of law and equity, and the liberalizing of the provisions for joining claims and parties, all provided by these rules, *the combining of demands for declaratory and injunctive relief in a single proceeding seems wholly appropriate.*" 1 Kent, *R.I. Civ. Prac.,* § 57.3 at 428 (1969). (Emphasis added.)

In short, *Sousa* no longer is good law because it preceded the adoption of the Superior Court Rules of Civil Procedure and Rhode Island's abandonment of the niceties of common-law pleading. In this case, plaintiff's petition for declaratory relief contained a separate prayer for a preliminary injunction. In light of Rules 18 and 20 and the above-referenced authorities, this clearly was proper. Therefore, the hearing justice correctly concluded that the combination of a request for a declaratory judgment with a request for injunctive relief hardly was fatal to plaintiff's complaint.

■ The defendants also argue that, pursuant to this Court's decision in *Leonardo v. Vose,* 671 A.2d 1232 (R.I.1996) (per curiam), plaintiff's petition for declaratory relief was not the proper method to raise issues concerning the calculation of good-time credits. They suggest that such issues "should properly be asserted in an application for post-conviction relief."

In *Leonardo,* the petitioner sought review of the DOC's computation of good-time credits by way of the Administrative Procedures Act, G.L.1956 § 42–35–15. *Leonardo,* 671 A.2d at 1233. A Superior Court justice treated the petitioner's complaint as an application for post-conviction relief and denied it. *Id.* In reviewing this case on appeal, we said that we had "previously directed that issues regarding the computation of good-time credit should

properly be filed as an application for post-conviction relief." *Id.*

In this case, however, plaintiff was not seeking to have the court review the discretionary aspects of DOC's computation of his good-time credits against his prison sentence. Rather, he sought to have the Superior Court declare what his legal rights were under the good-time statute, after defendants, in exercising their discretion, determined that he was entitled to receive the maximum amount of good-time credits possible under the law. Seeking such relief under the declaratory-judgment statute was appropriate, we hold, after defendants, in their discretion, decided that this particular inmate was entitled to receive the maximum monthly good-time credits allowed by law. *See, e.g., Rondoni v. Sherman,* 90 R.I. 322, 323, 158 A.2d 267, 267–68 (1960) (prisoner brought action for declaration of rights under good-time statute).

Next, relying on this Court's decision in *Barber v. Vose,* 682 A.2d 908 (R.I.1996), defendants maintain that plaintiff is not entitled to any particular amount of good-time credits per month and that the awarding of good-time credit is "wholly discretionary." Although this is true in the abstract, the facts in *Barber* are distinguishable from the case at bar. In *Barber,* the inmate petitioned the Superior Court for habeas corpus. *Id.* at 909. Barber asserted that he was being illegally detained. *Id.* He argued that, based upon his good behavior and good-time credits, his prison sentence should have expired already. *Id.* at 910. He based his conclusion on his assertion that, pursuant to § 42–56–24, he was entitled to receive up-front good-time credits immediately upon his entry into the ACI. *Barber,* 682 A.2d at 910. We disagreed and concluded that the good-time statute was discretionary in its application. *Id.* We stated that "[i]t is

dependent upon an inmate's monthly compliance with and obedience to prison rules and regulations as well as the further affirmative discretionary action on the part of two different department of corrections officers." *Id.* We noted that, pursuant to the good-time statute, the department of corrections officials "are vested with discretion in granting or refusing to grant good-behavior and institutional industries time credits, depending upon the inmate's monthly record of conduct[.]" *Id.*

■ In this case, however, plaintiff was not seeking up-front credits under the good-time statute, nor was he challenging the discretionary aspects of defendants' decision to award good-time credits to inmates such as himself. Rather, he was seeking declaratory and injunctive relief with respect to the maximum amount of good-time credit that he was eligible to receive based upon his record of good behavior. In other words, he argues, once an inmate complies with all the applicable prison rules and requirements and has not been subjected to discipline for his or her misconduct, then he or she should be eligible to receive the maximum good-time credits that can be awarded in accordance with the dictates of § 42–56–24. To be sure, as noted in *Barber,* "good behavior or good time credits * * * do not accrue as a matter of right, but instead, must be earned and can be given only by the required affirmative action of the designated department of correction officials." *Barber,* 682 A.2d at 917. Nevertheless, when those officials, in the exercise of their discretion, have decided to grant the maximum amount of good-time credits to an inmate because he or she has earned such credits, they must do so in accordance with the statutory formula set out in § 42–56–24. As we indicated in *Barber,* "[i]t appears fundamental that [an inmate's] right to good behavior * * * credits is purely

statutory and 'may be acquired only in the manner and under the circumstances pointed out by statute.'" *Barber*, 682 A.2d at 911 (quoting *Burns v. Page*, 446 P.2d 622, 623 (Okla.Crim.App.1968)).

The defendants' final claim of error is that "[t]he good time statute provides that a prisoner shall receive one (1) day of good time per month as there are years in a prison *term* of sentence, on the condition that appropriate DOC officials provide consent." Thus, they contend, after an inmate has completed serving one or more sentences in a series of consecutive sentences for different crimes, that inmate should be entitled to good-time credit only according to the time remaining to be served in his or her final unserved sentence, and he or she should not be entitled to good-time credits based upon the expired and previously served portion of the consecutive sentences.

Subsection (b) of § 42–56–24 pertains to the calculation of consecutive sentences and provides: "For the purposes of computing the number of days to be deducted for good behavior, consecutive sentences shall be counted as a whole sentence[.]"

In *Rondoni*, 90 R.I. at 327–28, 158 A.2d at 270, this Court determined that the then-existing good-time statute contained nothing that authorized the DOC officials to "consolidate for purposes of computation of 'good time' separate sentences governed by terms which may be of varied or similar lengths merely because upon the completion of one sentence he must immediately commence serving the next." This Court held that each sentence under "consecutive sentences [was] legally separate and distinct from the other." *Id.*

After this Court's decision in *Rondoni*, however, the General Assembly amended the statute, G.L.1956 § 13–2–44, as amended by P.L.1960, ch. 112, § 1, that governed good-time credits at the time. This amendment negated the holding in *Rondoni* and provided that "for purposes of computing the number of days to be deducted for good behavior, *consecutive* sentences shall be counted as a whole sentence * * *." *State v. Ouimette*, 118 R.I. 525, 527, 375 A.2d 209, 210 (1977). Thus, based upon the clear and unambiguous language of subsection (b) of § 42–56–24, consecutive sentences must be aggregated in calculating the maximum amount of good-time credits that can be awarded to an inmate with respect to any unserved portion of the consecutive sentences, and this rule does not change after the inmate has completed serving all but the last of the consecutive sentences.

In this case, given that the plaintiff's consecutive sentences totaled in the aggregate more than ten years to serve, and given that, in the exercise of their discretion, the defendants had determined to award him the maximum amount of good-time credit for which he was eligible during the months in question, the plaintiff was entitled to receive a maximum "good-time" credit of ten days per month throughout all the years of his imprisonment, even while he was serving the final eight-year term of his third consecutive sentence.

For these reasons, we deny the defendants' appeal and affirm the Superior Court order.

Justice FLAHERTY did not participate.