**Anthony FIORE et al.**

**v.**

**TOWN OF SOUTH KINGSTOWN et al.**

**No. 99–482–C.A.**

Supreme Court of Rhode Island.

Nov. 7, 2001.

William Landry, Providence, for Plaintiff.

Michael DeSisto, Providence, for Defendant.

Present: LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

Anthony Fiore, Roland Fiore, South County Sand and Gravel, Inc., Fiore Properties, Inc., and Beaches of Main Street, LLC appeal from an entry of summary judgment against them by a Superior Court hearing justice and in favor of the Town of South Kingstown.

---

**12.** Percy Bysshe Shelley, *Ozymandias,* in *The New Oxford Book of English Verse, 1250–1950,* 580 (Helen Gardner ed.1972).

## Facts

In view of the disposition that we make of the appeal in this case, it is unnecessary to engage in any lengthy recitation of the pertinent facts giving rise to the plaintiffs' request for a declaration that an amendment to the South Kingstown zoning ordinance enacted by its town council be declared "void *ab initio*" and for injunctive relief preventing the town from enforcing the amendment.

Suffice it to say, the plaintiffs, all property owners in the Town of South Kingstown, filed a complaint seeking injunctive relief and damages on May 31, 1996 in the Washington County Superior Court. In that action they originally challenged a May 13, 1996 town council amendment to the South Kingstown zoning ordinance asserting that (1) it was *ultra vires* because it was not authorized by any specific grant of enabling authority from the General Assembly; (2) if authorized by the General Assembly, the delegation by that Assembly was an "unbridled delegation" in violation of article 6, section 2, of the Rhode Island Constitution; (3) it violated the plaintiffs' substantive due process rights in violation of article 1, section 2, of the Rhode Island Constitution and the Fifth and Fourteenth Amendments to the United States Constitution, and (4) the amendment took their private property for public use without just compensation.

In succinct essence, the amendment adopted on May 13, 1996 placed an initial twenty-four month "cap" upon the number of residential building permits that could be issued by the town's building official.

Its pertinent provision concerning the "cap" procedure provides:

"based upon studies conducted pursuant to the Comprehensive Plan that the Town's present capacity for additional dwelling units within its sustainable and serviceable limits as set forth in the most recent 6–year Capital Improvement Program equals not more than one thousand (1,000) dwelling units in addition to those now existing. The initial 24–month quota is therefore set at three hundred twenty (320) dwelling units. This quota will assure that the remaining capacity will not be exhausted before remedial or mitigative efforts can be taken by the Town." South Kingstown Zoning Ordinance, Article 23, § 2320(B)(1994).[1]

For unexplained reasons the case appears to have languished in the Superior Court. On September 25, 1997, the town moved for entry of summary judgment. The plaintiffs thereupon abandoned all their claims, except one alleging a violation of their substantive due process rights. The town's motion was heard and granted on February 15, 1999. The plaintiffs thereafter timely appealed.

## Analysis

In their appellate brief the plaintiffs present but one issue for our consideration. It is:

"Did the trial court err in deciding that plaintiffs/appellants had failed to raise a genuine issue of material fact as to whether the South Kingstown building

---

1. Article 23 of the South Kingstown Zoning Ordinance by its terms expires on December 31, 2001, unless sooner extended by earlier enactment by the town council of an ordinance extending the expiration date. Section 2321 of the ordinance exempted the following from the twenty-four-month quota: protected development; housing for the elderly; special impact development; multihousehold dwellings not exceeding 800 square feet per unit. Section 2322 allows the issuance of permits for dwellings in phased subdivisions and low or moderate income housing, but those permits are apparently not counted as part of the twenty-four-month quota.

permit 'cap' ordinance, as applied in 1997, was arbitrary and not reasonably or rationally related to a legitimate governmental purpose?"

We interpret that appellate issue as intending from this Court our declaration concerning the validity of the town's ordinance as it applied to the plaintiffs in 1997. In that context, we first look to determine whether on February 15, 1999, when the town's motion for summary judgment was heard and granted, there existed an actual or justiciable controversy between the parties.

Although that issue was not considered by the hearing justice, we conclude that none existed at that time. Given the facts as they existed before the Superior Court motion hearing justice, even if that justice had declared the ordinance as applied to the plaintiffs in 1997 to have been invalid, the plaintiffs, in light of their waiver of a "takings claim," would have no right or claim that they could enforce against the town despite such a declaration. None of the plaintiffs ever had applied for or had been denied any request for a building permit to construct a dwelling upon any of the land owned by them. *Nardi v. City of Providence*, 89 R.I. 437, 449, 153 A.2d 136, 142 (1959). Thus, it appears that all that the plaintiffs were seeking to obtain in February 1999 was a Superior Court judicial declaration concerning the validity of the town's growth cap ordinance as it had been applied in 1997. But because one challenged twenty-four month quota on a cap of 320 dwelling units had expired, and was no longer in effect when the court passed on its validity, they were not entitled to that declaration in 1999 by the Superior Court nor now by this Court in 2001. Whatever the validity of the 1997 ordinance building permit procedures used in 1997, that issue has been made moot by time. The plaintiffs were not seeking in 1999 nor 2001 to undo anything that may have been done to them in 1997 as a result of the town's ordinance.

"This Court has consistently held that a case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy." *Associated Builders & Contractors of Rhode Island, Inc. v. City of Providence*, 754 A.2d 89, 90 (R.I.2000). *See also Sullivan v. Chafee*, 703 A.2d 748, 753 (R.I. 1997); *Seibert v. Clark*, 619 A.2d 1108, 1110 (R.I.1993). We have on specific occasion reviewed an otherwise moot case only when an issue raised in the particular case was likely to recur in such a way as to evade judicial review, and if the case subject matter was of extreme public importance. *In re Island Hi-Speed Ferry, LLC*, 746 A.2d 1240, 1243 (R.I.2000) (citing *Sullivan*, 703 A.2d at 753). *See also Morris v. D'Amario*, 416 A.2d 137, 139 (R.I. 1980). The limited question before us concerning the validity of the town's application of its growth "cap" ordinance in 1997 offers now no compelling reason for this Court to depart from our fundamental judicial precedent to defer from adjudicating issues that have become moot.

Recognizing that the entry of summary judgment by the Superior Court hearing justice was for reasons other than mootness, "[w]e have long held that this Court can affirm the judgment of the Superior Court on grounds not actually relied upon by the trial court to justify its ruling." *Moseley v. Fitzgerald*, 773 A.2d 254, 258 (R.I.2001) (quoting *State v. Lynch*, 770 A.2d 840, 847 (R.I.2001)).

For the reasons above stated, the plaintiffs' appeal is denied and dismissed for reasons of mootness, and the summary judgment entered in the Superior Court is affirmed. The papers in this case are

remanded to the Washington County Superior Court.

Chief Justice WILLIAMS did not participate.